UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KATHY SHELLEY, as executor of Jerry L. Shelley's estate, <br><br> Appellant, <br><br> v. <br><br> DONALD ERNEST BRANDT, <br><br> Appellee. | Case No. 3:21-cv-00142 <br><br> Judge Richardson <br><br> On appeal from the United States Bankruptcy Court for the Middle District of Tennessee, Case No. 3:16-bk-08398 Adversary Proc. 3:17-ap-90067 |

## MEMORANDUM OPINION AND ORDER

The instant matter, as it arises in the captioned district court case, is an appeal from an amended judgment in a bankruptcy adversary proceeding. The amended judgment was entered in favor of Appellee, Donald Brandt ("Brandt"), against Jerry L. Shelley (who is now deceased, so that the executor of his estate, Kathy Shelley, is now litigating in his stead as Appellant). For the reasons set forth below, the Court rejects the appeal and affirms the judgment of the Bankruptcy Court.

PROCEDURAL BACKGROUND

As Appellant accurately describes the nature of the instant appeal:

> Appellant appeals the Judgment and Findings of the United States Bankruptcy Court for the Middle District of Tennessee as entered and filed January 14, 2021. The Order from which Appellant appeals is a final order. This order became final and appealable following the entry of an Order Regarding Motion to Reconsider and Amended Judgment, filed on February 5, 2021 .A Notice of Appeal was timey filed pursuant to Bankruptcy Rule 8002(a)(1) by Appellant on February 19, 2021.

(Doc. No. 21 at 7).

## FACTUAL BACKGROUND

The Court accepts, for purposes of this appeal, Appellant's below-referenced (commendably concise) summary of various facts that are, in the Court's view, adequately supported by the items of record cited by Appellant, including a copy of the contract at issue (Doc. No. 17 at 17-21, "Contract"), and the parties' stipulation of facts (Doc. No. 17 at 26-28):

> This is a case about a contract for the purchase and sale of two pieces of real property located in Montgomery County, Tennessee that did not close by the agreed upon date. Jerry Shelley, Appellant herein, and his wife, Lottie Shelley, purchased two tracts of real property in Montgomery County, Tennessee, located at 3875 Trenton Road and 140 Ringgold Road. Jerry L. Shelley granted a durable Power of Attorney to his wife Lottie Shelley on August 25, 2005On March 22, 2006, Ms. Shelley, individually and as agent for Jerry L. Shelley, entered into a purchase and sale agreement between Jerry and Lottie Shelley as Sellers, and Donald Brandt as Buyer, Appellee herein, for the properties located at 3875 Trenton Road, Clarksville, Tennessee and 140 Ringgold Road, Clarksville, Tennessee. The terms of the agreement included the following:
>
> > (a) Donald Ernest Brandt paid to Jerry and Lottie Shelley fifty-thousand dollars ($50,000) for down payment on the properties, to be used to bring mortgage accounts payable to Citi Financial Mortgage Company current as of that date;
> >
> > (b) Brandt will continue making payments to Citi Financial until loan is paid in full;
> >
> > (c) Brandt will pay insurance and property taxes until closing;
> >
> > (d) Lottie Shelley will rent 140 Ringgold Road for five-hundred dollars ($500) per month for five years beginning April 1, 2006;
> >
> > (e) Lottie and Jerry Shelley will rent 3875 Trenton Road for one-thousand five-hundred dollars ($1,500) per month for a period of fifteen years beginning April 1, 2006;
> >
> > (f) Brandt would close on both Properties no later than October 1, 2006 (this closing date was later amended to April 30, 2007, by agreement of the parties);

(g) Brandt would pay all balances owed as of the date of closing, including federal tax liens and closing costs, with the purchase price to reflect the $50,000.00 down payment;

(h) Brandt would pay $20,000.00 to the estate of Lottie and Jerry Shelley should they die before April 1, 2016.

On April 30, 2007, Brandt had not closed on the properties identified in the contract. The record reflects no further extensions were negotiated or agreed to by the parties.

On November 6, 2007, Jerry Shelley revoked his Power of Attorney to Lottie Shelley.

On March 9, 2012, Regions Bank, as conservator for Jerry Shelley, filed a motion to sell the properties at 3875 Trenton Road and 140 Ringgold Road in the Montgomery County Chancery Court guardianship action. Following this motion, Donald Brandt filed a Complaint for breach of contract in Montgomery Circuit Court on March 20, 2012, and a Motion to Intervene and stay the sale of the real estate in Montgomery County Chancery Court on April 12, 2012. Shelley defended said action claiming the contract for sale expired on its terms on April 30, 2007. This stay was granted and the two cases were consolidated on July 23, 2012.

In December of 2012, Lottie Shelley, wife of Jerry Shelley and co-owner of the properties, died, leaving Jerry Shelley the sole owner of the real estate at issue.

Brandt filed a bankruptcy action in the United States Bankruptcy court for the Middle District of Tennessee on November 22, 2016, Case No. 316-08398. The record reflects no further action was taken by Brandt regarding the contract with Shelley until a Notice of Removal of the state court action to the bankruptcy court occurred on February 20, 2017. This civil action alleging breach of contract by Shelley, filed by debtor Brandt, became an adversary proceeding to the bankruptcy action, Adversary Proceeding No. 317-90067.

Following failed attempts at settlement, the matter came before the bankruptcy court for trial on July 27, 2020.

As a result of the pandemic and failing health of Shelley, the proceedings were conducted via video conferencing technology. The Court made oral findings on the record concluding that Shelley had breached the contract for the sale of real property, but reserved a decision as to the appropriate remedy for the breach pending further proceedings.

Though Shelley's health prevented additional testimony and meaningful collaboration with counsel on his part, the Court determined following arguments of counsel on January 11, 2021, to issue a Judgment and Findings on January 14,

2021. The Court determined Brandt was entitled to specific performance as the appropriate remedy for the breach. Additionally, Shelley was ordered to transfer title to the properties to Brandt, subject to Brandt performing the remainder of his obligations under the contract, which the Court determined to be payment of $38,927.00. However, this payment could be accomplished through a waiver of attorney's fees as to the extent an amount equal to or greater than was awarded to Brandt from Shelley. The Court specifically determined that Brandt was entitled to an award of attorney's fees as the prevailing party.

Shelley, through counsel, filed a Motion to Reconsider as to the Court's rulings, specifically including the findings that Shelley breached the contract, Brandt's obligations and commitments were not conditions precedent to the contract, neither unjust enrichment nor amelioration were applicable to the matter, that the rental payments/offsets were incorrectly determined by the Court, and that Brand was entitled to attorney fees. By Order and Amended Judgment, the Court denied all requests of Shelley, but did increase the offset amount to Shelley of $107,927.00.

Following this final order, Shelley timely filed a Notice of Appeal.

(Doc. No. 21 at 10-14) (citations omitted).

## DISCUSSION

In her primary brief (Doc. No. 21), Appellant sets forth four issues. The Court will discuss each in turn.

### I.     ISSUE 1

Appellant frames what is clearly the primary issue on this appeal as "[w]hether the Bankruptcy Court erred in finding that Jerry Shelley breached the terms of [the Contract, *i.e.*] a contract by and between the parties for the sale of property located at 3875 Trenton Road, Clarksville, TN, and 140 Ringgold Road, Clarksville, TN [collectively, the "property"]." (Doc. No. 21 at 8). Unsurprisingly, Appellant argues that this question should be answered in the affirmative.

In so doing, Appellant contends essentially that the Bankruptcy Judge erred in determining that Jerry Shelley ("Shelley") breached the Contract, because (according to Appellant) Brandt

failed to do certain things that he was obligated to do under the contract and that those things were conditions precedent to the Contract—meaning that there was a failure of conditions precedent to Shelley's contractual obligation to sell the property to Brandt, and that therefore Shelley is not culpable of breaching the Contract. If Appellant were correct about the existence of, and Brandt's failure to satisfy, conditions precedent, she would indeed have a complete defense to the claim of breach of contract. *See Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 115 (Tenn. Ct. App. 2005) ("It is true that parties to a contract are generally free to impose whatever conditions they wish on their contractual undertakings and that if such conditions are not literally met or exactly fulfilled, no liability can arise on the promise qualified by the conditions.")

Before directly addressing Appellant's argument, the Court first sets forth some basic principles of Tennessee law regarding conditions precedent, and how conditions precedent are different from both conditions subsequent and mere contractual duties (the violation of which may subject the duty-bound party to liability for breach of contract, but the performance of which are not necessary to trigger the counterparty's duty to perform):

> "A conditional contract is a contract whose very existence and performance depends upon the happening of some contingency expressly stated therein . . ." *Real Estate Mgmt. v. Giles*, 293 S.W.2d 596, 599 (Tenn. Ct. App. 1956). With respect to a transactional contract such as the one at issue in this case, a condition *precedent* affects whether a duty to perform arises, whereas a condition *subsequent* affects whether an established duty to perform may be extinguished. *See Harvey v. Turner*, No. M2014-00368-COA-R3-CV, 2015 WL 1451702, at *5 (Tenn. Ct. App. Mar. 26, 2015), *perm. app. denied* (Tenn. Aug. 14, 2015) ("A condition precedent in a contract ... must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies." (quoting *McGhee v. Shelby Cty. Gov't*, No. W2012-00185-COA-R3-CV, 2012 WL 2087188, at *8 (Tenn. Ct. App. June 11, 2012)); Restatement (Second) of Contracts § 224, cmt. e (1981) ("Parties sometimes provide that the occurrence of an event, such as the failure of one of them to commence an action within a prescribed time, will extinguish a duty after performance has become due . . . . Such an event has often been called a 'condition subsequent.'"). This Court

has noted that "[w]hether a contractual provision is or is not a condition precedent depends upon the parties' intention which should be gathered from the language they employ and in light of all the circumstances surrounding the contract's execution." *Harlan v. Hardaway*, 796 S.W.2d 953, 957-58 (Tenn. Ct. App. 1990), *perm. app. denied* (Tenn. Sep. 24, 1990).

*Song v. Chung*, No. E201800114COAR3CV, 2018 WL 5618114, at *7 (Tenn. Ct. App. Oct. 30, 2018).[1]

> Whether a contractual provision is or is not a condition precedent depends upon the parties' intention which should be gathered from the language they employ and in light of all the circumstances surrounding the contract's execution. *Buchanan v. Johnson,* 595 S.W.2d 827, 830 (Tenn. Ct. App.1979). Courts do not favor conditions precedent and will, as a general matter, construe doubtful language as imposing a duty rather than creating a condition precedent. *Buchanan v. Johnson,* 595 S.W.2d at 831; Restatement (Second) of Contracts § 227(3) (1979); 3A A. Corbin, *Corbin on Contracts* § 635 (1960).
>
> The existence of a condition precedent does not depend upon the use of any particular language. *Nashville & Northwestern R.R. v. Jones,* 42 Tenn. (2 Cold.) 574, 583–84 (1865). However, the presence of a condition is usually signalled by a conditional word or phrase such as "if," "provided that," "when," "after," "as soon as," and "subject to."

*Harlan*, 796 S.W.2d at 957–58. *Accord Koch v. Constr. Tech., Inc.*, 924 S.W.2d 68, 71 (Tenn. 1996) ("[I]t is well-established that condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them." (quoting *Harlan*, 796 S.W.2d at 958 (Tenn.App.1990))).

Even if a contract does indeed specify one or more conditions precedent, a beneficiary of a condition precedent may waive, or be estopped from asserting, those conditions under certain circumstances. As the Tennessee Court of Appeals previously has explained:

> It is true that parties to a contract are generally free to impose whatever conditions they wish on their contractual undertakings and that if such conditions are not literally met or exactly fulfilled, no liability can arise on the promise qualified by

---

[1] The Court here is bound to apply the appropriate state law (here, Tennessee law) to the contractual analysis here at issue. The Court is confident that *Song*, although unpublished and not a decision of the Tennessee Supreme Court, accurately states Tennessee law on the topic that it discusses.

> the conditions. 13 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS §§ 38:2, at 370-71, 38:6, at 384-85 (4th ed. 2000) [hereinafter WILLISTON ON CONTRACTS]. However, it is also "well established that a party to a contract may waive a condition precedent to his or her own performance of a contractual duty, even in the absence of a provision in the contract expressly authorizing a waiver." 13 WILLISTON ON CONTRACTS § 39:17, at 568-69; *see American Cent. Ins. Co. v. McCrea, Maury & Co.*, 76 Tenn. 513, 525, 1881 WL 4452, at *6 (1881) ("it is in the nature of a condition precedent to be subject to waiver"). This is so even where, as here, the contract contains a clause stating that the entire agreement will be null and void if the condition is not met. 13 WILLISTON ON CONTRACTS § 39:17, at 568-69. If, in spite the failure of the condition precedent, the party in whose favor it was drafted performs or receives performance under the contract, the condition precedent is waived. 13 WILLISTON ON CONTRACTS § 39:17, at 569; 8 CATHERINE M.A. MCCAULIFF, CORBIN ON CONTRACTS § 40.4, at 533 (Joseph M. Perillo ed., rev. ed. 1999) . . . . The contract will be enforced despite the nonoccurrence of the condition, and the party that waived the condition is estopped from asserting the failure of the condition as a defense in a suit to enforce the agreement. 13 WILLISTON ON CONTRACTS § 39:17, at 569-70.

*Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 115 (Tenn. Ct. App. 2005), *quoted in Song*, 2018 WL 5618114, at *7.

Appellant asserts that the Bankruptcy Judge erred in finding that Shelley breached the Contract, because (according to Appellant) the Bankruptcy Judge erred in finding that certain conditions precedent to Appellant's obligation to sell the property went unsatisfied by Brandt, meaning that Appellant never became contractually obligated to sell the property. But there is a problem for Appellant: there is no transcript of the trial or of the Bankruptcy Judge's oral rulings from the bench that were incorporated by reference into his written findings of facts and conclusions of law, which otherwise contained little information about what the evidence was, what facts he found, and what he concluded as a matter of law with respect to his determination that Shelley breached the Contract. In an attempt to address this problem, Appellant writes that she "contends sufficient information is set forth in the record, including the written findings of the

Court to ascertain the underlying basis of Appellant's argument as has been set forth in Appellant's brief." (Doc. No. 25 at 6).

In asserting that, despite the lack of transcripts of the hearing and the Bankruptcy Judge's oral rulings, there is sufficient information in the record for this Court to accept her argument that the Bankruptcy Judge erred in finding that Jerry Shelley breached the Contract, Appellant writes:

> As set forth in Appellant's brief, the Court determined those obligations to be performed by buyer Donald Brand under the contract were not conditions precedent to the purchase of the property. . . . The only issue to be determined by the reviewing body is whether the court erred in ignoring the plain language of the agreement itself and substituting its own judgment. Appellant's brief fully sets forth the applicable law when resolving disputes involving contract interpretation. The Court erred in its determination regarding the law applicable to this underlying contract dispute, specifically whether the terms of the contract were conditions precedent to the closing of same.

(Doc. No. 25 at 6-7).[2] Appellant's assertions here are flawed in several respects. First, although it is indeed "set forth" (*i.e.*, asserted) in Appellant's brief that the Bankruptcy Judge "determined [that] those obligations to be performed by buyer Donald Brand under the contract were not conditions precedent to the purchase of the property," such assertion is not supported by citation to anything in the record. Appellant has not shown, and the Court has been unable to find on its own beyond what is indicated in the sentence immediately below, anything in *the record* (as opposed to *Appellant's briefing*) (i) constituting evidence that particular contractual obligations of Brandt went unsatisfied; (ii) that the Bankruptcy Judge found that such obligations went unsatisfied; or (iii) that the Bankruptcy Judge found that these (supposedly unsatisfied) obligations were not conditions precedent.

---

[2] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page __ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

The closest thing the Court can find is the Bankruptcy Judge's statement(s), in its order on Appellant's motion to reconsider, that "Mr. Shelley asserts that certain conditions precedent were not satisfied and that the Court erred in finding a breach on the part of Mr. Shelley" but that "[he] does not find any of Mr. Shelley's arguments in this regard new or compelling" or grounds for reconsidering this part of his "oral . . . ruling regarding the breach." (Doc. No. 17 at 177-78). So all the Court can divine from the record is that Shelley had argued at the time of trial that "certain conditions precedent were not satisfied," but that the Bankruptcy Judge nevertheless found a breach of the Contract on Shelley's part. So the Court cannot (without blindly accepting Appellant's assertions in her briefing that went unsupported by citation to the record) determine from the record what it was Shelley contended were conditions precedent, what the evidence was (beyond the plain text of the contractual language itself) to support the notion that the supposed conditions precedent were in fact conditions precedent, what the evidence was to support the notion that the supposed conditions precedent in fact went unsatisfied by Brandt, what the Bankruptcy Judge did or did not find to be conditions precedent, which of the conditions precedent that the Bankruptcy Judge found to exist (if indeed he found any to exist actually) went unsatisfied, and what (if anything) the Bankruptcy Judge said about the possibility of Shelley having waived (or being estopped to assert) any condition(s) precedent.[3]

In short, the Court simply cannot tell from the record (devoid as it is of the essential transcripts) what the evidence and arguments were with respect to Shelley's argument that (alleged) failures of conditions precedent relieved him of the contractual obligation to sell the property. Nor can the Court tell what the Bankruptcy Judge found as to the facts, and concluded

---

[3] To be clear, the Court would not surprised if the transcripts, had they been filed, would support Appellant's version of events. But they were not filed, and so such version—even if not incredible and not directly challenged by Brandt-cannot blindly be accepted by the Court.

as to the law, with respect to such argument. Under these circumstances, the Court simply lacks information of record sufficient for it to determine whether the Bankruptcy Judge erred in finding that Shelley breached the Contract due to the supposed failure of condition(s) precedent. This alone prevents the Court from reversing the Bankruptcy Judge's determination that Shelley breached the Contract on the basis that such determination was the result of some erroneous finding of fact or conclusion of law regarding a supposed failure of Brandt to satisfy one or more conditions precedent.[4]

Appellant appears to have three responses to the Court's line of thinking. First, Appellant writes:

> Appellant has set forth a statement of the case, designating with specificity those items in the record which support the factual basis of the appeal. Appellee has failed to contest those statements in the form of a counter-statement of the case, a required by Federal Rules of Bankruptcy Procedure Rule 8014, when Appellee is dissatisfied with the appellant's statement.

(Doc. No. 25 at 6). Appellant seems to suggest that, not having provided a counter-statement, Brandt is effectively stuck with Appellant's asserted facts as set forth in her statement of the case. The Court is not so sure; Appellant does not support this suggestion with any case law, and the Rule itself does not expressly support this suggestion. And even if Brandt were now stuck with the facts set forth in Appellant's *statement of the case*, that would not get Appellant very far. The key alleged facts on which Appellant relies are not in the statement of facts, but rather in the *argument* section of her primary brief. And even if Brandt were deemed to have conceded the facts set forth in the former place, he should not be deemed to have conceded the facts set forth in the latter place,

---

[4] The Court's analysis here obviously is based in large part on the fact that transcripts of the key proceedings were not provided as required by Federal Rule of Bankruptcy Procedure 8009. Brandt appears to argue that this Court can reject this appeal based solely on the Appellant's failure to file such transcripts. Brandt perhaps is correct in that regard, but the Court need not so decide, because even if the failure to file such transcripts is not *per se* grounds for rejecting the appeal, the Court can and does rely more broadly on the proposition that the information in the record before it (limited as it is by, especially, a lack of key transcripts) prevents the Court from crediting Appellant's arguments for reversal, as explained herein.

because Appellant's assertion of facts there was not compliant with Rule 8014. Rule 8014(a)(8) states that the argument section of the appellant's primary brief "must contain . . . citations to the authorities and parts of the record on which the appellant relies." *See* Fed. R. Bankr. P. 8014(a)(8). The *argument* section (in contrast to the statement of facts) in Appellant's primary brief (Doc. No. 21) was, due to the absence of a transcript, devoid of citations to the record for many facts on which she relied. Additionally, Brandt's whole point in his brief—one that is certainly colorable— is that given the lack of a transcript to support Appellant's factual assertions, he should not be required to respond *substantively* at all to the appeal. These circumstances persuade the Court to reject any suggestion that Brandt is deemed to have accepted the facts asserted without support in the argument section of Appellant's primary brief.

Second, Appellant writes, "Appellant contends the oral recordings of the findings, in addition to the legal and factual basis set forth in the Court's written orders are sufficient to determine whether the Court erred in its findings." (Doc. No. 25 at 5-6). The oral recordings of the Bankruptcy Judge's oral finding were designated as part of the record on appeal, (Doc. No. 17 at 5), but oral recordings of the trial testimony were not, as far as the Court can tell. And Appellant has cited no authority for the proposition that the Court must pull recordings to see whether they support a party's claims as to what happened in the court below. This would be a particularly absurd requirement here because: (i) Bankruptcy Rule 8009(b)(1)(A)—which requires the appellant to file "a transcript of such parts of the proceedings not already on file as the appellant considers necessary for the appeal"—clearly is designed, in large part, to prevent the district judge from having to do any such thing; and (ii) Appellant herself has not indicated where, temporally, statements on which she relies can be found on the recordings. After all, "'[j]udges are not like pigs, hunting for truffles' that might be buried in the record." *Emerson v. Novartis Pharms.*

*Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)).

Finally, Appellant writes as follows:

> Whether the obligations under the contract to be performed by Mr. Brandt were conditions precedent to the closing as a matter of law can be determined by the reviewing body by analyzing the unambiguous terms of the contract. The facts are not in dispute. The only issue to be determined by the reviewing body is whether the court erred in ignoring the plain language of the agreement itself and substituting its own judgment.

(Doc. No. 25 at 7). This argument fails because, contrary to Appellant's implication here, the Court cannot rule in Appellant's favor based on a mere analysis of the (allegedly) "plain" and "unambiguous" terms of the Contract that supposedly set forth conditions precedent. The reason is two-fold. First, as discussed below, contrary to Appellant's claims, the language on which she relies does *not* unambiguously prescribe conditions precedent; instead, it (as well as the Contract as a whole) suggests otherwise. Second, at best, the Contract is ambiguous as to whether the claimed conditions precedent are in fact conditions precedent, and, as indicated elsewhere herein, the record is inadequate to enable this Court to determine that the ambiguity should be resolved so as to find the existence of conditions precedent as requested by Appellant.

Finally, Appellant fails to account for the fact that a failure-of-conditions precedent defense, like the one made by Shelley, can be defeated based on waiver or estoppel *even if there are conditions precedent.* Brandt clearly indicated, in his pretrial brief, that he intended to rely on what is clearly in substance a claim of estoppel to counter Appellant's reliance on Brandt not making mortgage payments to Citi Financial. (Doc. No. 17 at 40). According to Brandt, he was told by "the mortgage company" (presumably Citi Financial) that it would not accept mortgage payments from him because, as he understand the mortgage company's explanation, it had been so instructed by Shelley. The Court cannot tell from the record whether this claim of estoppel (or

any other claim of estoppel on this or any other alleged condition precedent) was made at trial and, if so, was meritorious; it likewise does not know what (if anything) the Bankruptcy Judge concluded about this claim of estoppel, or about any other claim of estoppel or waiver about this or any other alleged condition precedent. And therein lies the problem: not being in a condition to know the extent to which the Bankruptcy Judge relied on waiver or estoppel to reject Shelley's defense of failure of condition(s) precedent, or the extent to which the evidence would have supported any such reliance on waiver or estoppel to rebut such defense by Shelley, the Court cannot possibly say that the Bankruptcy Judge erred in rejecting this defense. In short, the Court cannot determine from the record why the Bankruptcy Judge rejected this defense—be it the absence of any conditions precedent, the waiver of conditions precedent, the lack of breach of conditions precedent, or some combination thereof—which is why the Court cannot possibly accept Appellant's theory as to why the Bankruptcy Judge erred in finding a breach of the Contract on Shelley's part.

Alternatively, assuming *arguendo* that it *could* decide (and needed to decide) the issue based on the language of the Contract alone, the Court would find that the Contract did *not* make any of the contractual obligations at issue conditions precedent to Shelley's contractual obligation to sell the property. This conclusion is supported by the presumption under Tennessee law (ignored entirely by Appellant) *against* deeming a contract term a condition precedent. And *Koch* expresses a principle that further supports this conclusion. There, the plaintiff (Mark Koch) had performed as a subcontractor to the defendant corporation, which had served as the general contractor on a project. The defendant claimed that a particular sentence in the contract between the parties created a condition precedent to plaintiff's receipt of the contractual payment for which he had sued. Another sentence in the parties' contract had used language that unambiguously prescribed a

condition precedent. The Tennessee Supreme Court explained, "This sentence illustrates that the parties certainly knew how to create a condition precedent if they so desired. That they did not use such unambiguous language in the first sentence *prevents us from construing that sentence as a condition precedent* to Koch's right to payment." *Koch*, 924 S.W.2d at 73. *Koch* applies here because the alleged conditions precedent to which Appellant refers (apparently items (b) through (h) listed at the beginning of the "Factual Background" section above) are *not* stated in conditional terms, as in "if" or "provided that" the alleged condition precedent happens, then the buyer would sell the property. This alone is very detrimental to Appellant's position, but worse still is the fact that in at least one place, the Contract does make itself "contingent" (*i.e.*, conditioned) upon something, namely the appraised value equaling or exceeding the purchase price. (Doc. No. 17 at 17). The absence of similar language regarding the alleged conditions precedent is telling.

> Appellant argues:
>
> > The terms "will continue" and "will be paid until closing" are unambiguous and serve a central and necessary purpose under this contract to maintain the property available for purchase. The contract imposes a mandatory duty upon Brandt to make the payments necessary to keep the property out of foreclosure.

(Doc. No. 21 at 19). But contrary to Appellant's suggestion, the mere fact that a contract specifies a duty to be borne by a party does not mean that satisfaction of that duty is a condition precedent to the counterparty's obligation to perform (rather than grounds for the counterparty to have a valid claim for the other party's breach). And the mere use of the word "will" does not mean that what follows is a condition precedent. Instead, as indicated above, in general the language has to be expressly conditional in order for the Court to deem what follows a condition precedent. Perhaps here the applicable circumstances could show an exception to the general rule. But as indicated above, the information in the record (which does not include, most importantly, a trial transcript) is cursory regarding applicable

circumstances and is certainly inadequate for the Court to conclude that the Bankruptcy Judge erred in not finding the circumstances to indicate that there were conditions precedent despite the lack of such conditional language.

To the extent that Appellant makes other arguments (*i.e.*, arguments not directly related to an alleged failure of conditions precedent) for why the Bankruptcy Judge erred in finding Shelley in breach of the Contract (as for example by implying that the fact that the sale did not close by the contractually determined closing date somehow constitutes a "fail[ure]" attributable solely to Brandt (Doc. No. 21 at 20)),[5] the Court rejects the arguments because they are based on a recitation of the alleged applicable facts that are unsupported by an citation to the record.

## II.     Issue II

Appellant frames the second issue as "[w]hether the Bankruptcy Court erred in finding that the appropriate remedy for Shelley's breach is an award to Brandt of specific performance" (Doc. No. 21 at 23). In arguing for an affirmative answer to that question, however, Appellant relies repeatedly on assertions of fact for which no citation is given—presumably, again, due to the lack of a trial transcript. And Appellant fails to describe the Bankruptcy Judge's oral explanation for granting the remedy of specific performance, let alone cite to a transcript for such description. Under these circumstances, the Court cannot possibly determine whether (or that) the Bankruptcy Judge erred in concluding that specific performance was an appropriate remedy for the breach of contract he found to occur; the Court cannot determine that in so doing, he relied on any clearly erroneous findings of fact or reached any conclusions contrary to applicable law. This is especially

---

[5] In his pretrial brief, Brandt made clear his view that the fact that the property sale never occurred was Shelley's, and not his, fault. (Doc. No. 17 at 40). Again, the Court lacks a trial transcript to enable it to ascertain which side is, according to the trial evidence, correct on this issue.

so since, under Tennessee law,[6] the decision to order specific performance "rests in the sound discretion of the [judicial officer] under the facts appearing in the particular case." *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn. 1979).

For these reasons, grounds do not exist to disturb the Bankruptcy Judge's discretionary decision to award specific performance.

### III.     ISSUE 3

Appellant frames the third issue as "[w]hether the Bankruptcy Court erred in finding that Brandt owed Shelley, as the remainder of his obligations under the contract, the sum of $107,927.00." (Doc. No. 21 at 28). Appellant's discussion of this issue is extraordinarily brief, and what is included amounts largely to a mere recitation of what the Bankruptcy Judge did and did not do (and determine); Appellant here provides with no real analysis as to how the Court erred, and no citation to any case law whatsoever.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *In re John Richards Homes Bldg. Co., L.L.C.*, 405 B.R. 192, 230 (E.D. Mich. 2009) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–996 (6th Cir.1997)). Accordingly, Appellant has waived this issue.

### IV.     ISSUE 4

Appellant frames the final issue as "whether the Bankruptcy Court erred in finding that Brandt was entitled to attorney fees in this action and under the terms of the contract." (Doc. No. 21 at 30). Asserting that this question should be answered in the affirmative, Shelley argues that

---

[6] Appellant cites only Tennessee case law in addressing the propriety of the award of specific performance to Brandt, thus suggesting that she views Tennessee law (rather than, for example, federal common law) to apply to that issue. The Court agrees.

"this award was made in error as same had not been properly pled, nor had Brandt filed a motion for such an award following entry of the Judgment." (*Id.*). More specifically, she asserts:

> In the Sixth Circuit, claims for attorneys' fees are special damages and must be specifically pleaded under Rule 9(g) of the Federal Rules of Civil Procedure. *American Cas. Co. v. City of Detroit* (*In re American Cas. Co.*); 851 F.2d 794, 802 (6th Cir.1988). Shelley contends the Court erred in its determination that attorney's fees in this matter are not subject to the provisions of Rule 9 and/or case law asserting same should be specifically plead.
>
> Brandt, having failed to specifically plead as a claim its request for attorney's fees in the non-dischargeability proceeding, must be denied this relief.

(Doc. No. 21 at 31). Obviously, the key contention here is that the Bankruptcy Judge erred in determining that attorney's fees[7] in this matter need not be pled under the provisions of Rule 9 and/or case law asserting same. But Appellant does absolutely nothing to support this contention; she provides no argument as to why the Bankruptcy Judge erred either in his initially conclusion that Brandt is entitled to attorney's fees, or in his rejection of the argument in Shelley's motion to reconsider that Brandt is not entitled to attorney's fees in any amount because he (Brandt) did not specially plead a claim for attorney's fees. In rejecting Shelley's argument that attorney's fees had to be specially pled, the Bankruptcy Judge provided a discussion of several pages. (Doc. No. 17 at 159-63). Having entirely failed to address this discussion, or otherwise support its conclusory assertion of error here, Appellant has waived this issue just as it waived Issue 3.

## CONCLUSION

For the reasons set forth above, the judgment of the Bankruptcy Court is affirmed, and this appeal is dismissed.

This is the final order in this case denying all relief. The Clerk is directed to close the file.

---

[7] Appellant variously uses the terms "attorney fees," "attorneys' fees," and attorney's fees." The Court opts to use the latter term when speaking in its own voice.

It is so ORDERED.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE